IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICIA A. GOOD,

    **Plaintiff,**

  v.

    Civil Action 2:20-cv-3781
    Judge Sarah D. Morrison
    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Patricia A. Good, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 20), Plaintiff's Reply (ECF No. 21), and the administrative record (ECF No. 14). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.   BACKGROUND

Plaintiff protectively filed her application for benefits in January 2017, alleging that she has been disabled since July 5, 2016, due to bi-polar disorder, PTSD, anxiety, and depression. (R. at 436-444.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff

1

sought a *de novo* hearing before an administrative law judge. On May 15, 2019, ALJ Noceeba Southern (the "ALJ") held a video hearing at which Plaintiff, represented by counsel, appeared and testified. (R. at 247-282.) The ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on June 13, 2019. (R. at 225-246). On June 26, 2019, Plaintiff filed a Request for Review of Hearing Decision Order. (R. at 432-435.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the Agency and her relevant hearing testimony:

> [Plaintiff] reported conditions that limit her ability to work, including bipolar disorder, posttraumatic stress disorder (PTSD), depression and anxiety. Additionally, she reported that she cannot get along well with others because she has a hard time keeping her thoughts to herself, and that her conditions make it hard for her to follow a schedule. Further, she testified that her mental conditions, back, feet and hip problems would prevent her from working on a full-time basis.

(R. at 233.)

## III. RELEVANT MEDICAL RECORDS

The ALJ summarized the relevant[1] medical records concerning Plaintiff's mental impairment:

> Regarding mental health conditions, the evidence of record supports [Plaintiff]'s complaints of depression, anxiety, bipolar disorder and PTSD; however, these conditions are not found to be disabling, as the record documents that [Plaintiff]'s

---

[1] The medical records indicate that Plaintiff has received treatment for various conditions, and the Undersigned recognizes that Plaintiff also suffers from physical impairments. The ALJ assigned exertional limitations due to these physical conditions. (R. at 225-246.) Plaintiff's Statement of Errors, however, focuses primarily on Plaintiff's mental impairments and limitations. (*See* ECF No. 17.) Accordingly, the Court will focus its review of the medical evidence regarding Plaintiff's mental impairments and limitations.

2

medications reduce the severity of the associated symptoms. Further, the record fails to document recurring emergency treatment or recurring, extended inpatient hospitalizations for mental health impairments.

In January of 2017, the record documents that [Plaintiff] sought treatment with complaints of visual hallucinations on occasion, as she reported that she was seeing ghosts in her house and shadows and things moving out of the corner of her eye, and mood swings; she was noted to be homeless, unemployed, and reported difficulty falling asleep and staying asleep at night. Upon evaluation, her mood was noted as depressed, her thought process was noted as being logical, her behavior was noted as cooperative, and her affect was assessed as full. The record noted existing diagnoses of anxiety depression and schizophrenia.

In September of 2017, during a follow-up visit for anxiousness, she reported that her depression was "okay" and her hallucinations were better, but she reported that she was still having bad dreams. She was diagnosed with bipolar disorder, anxiety disorder, and PTSD, and was noted to have borderline personality traits.

In December of 2017 and January of 2018, [Plaintiff] was diagnosed with post-traumatic stress disorder, panic disorder, major depressive disorder, and sciatica. Specifically, on January 11, 2018, the record documents that she reported that she felt better, but she was still depressed and very anxious; she indicated that her medications were working and denied experiencing any side effects. A Mental Status Exam was generally normal, except she was assessed with an anxious and depressed mood, and a constricted affect; auditory and visual hallucinations were noted to be occurring less often.

In March and April of 2018, she was diagnosed with major depressive disorder and anxiety disorder. Specifically, on March 5, 2018, she reported that her depression was getting better, voices and single word voices were better, she was less irritable, her mood and anxiety wee improving, and her appetite and sleep were noted to be improved with the use of prescribed medications. However, on April 11, 2018, she complained of having more anxiety attacks, having nightmares, and reported that she was working at a Sunoco gas station.

In June of 2018, she was diagnosed with major depressive disorder, anxiety disorder and sciatica. She reported having problems with her boyfriend, anxiousness; feeling hyped up at times, and denied experiencing side effects from her prescribed medications.

In September of 2018, [Plaintiff] reported that she was taking her medications and that her depression was better, as they were helping with symptoms; however, she reported that she was still getting anxious and having nightmares. Similarly, in October and December of 2018, she reported that her moods were better and that her appetite and sleep were okay. During these months, she was diagnosed with bipolar disorder, anxiety disorder, and post-traumatic stress disorder.

3

>On February 4, 2019, an Adult Diagnostic Assessment update indicated that [Plaintiff]'s medications were helping, but she continued to experience side effects including auditory and visual hallucinations. Specifically, she reported hearing mumbling voices all the time and getting more anxious and depressed. She was diagnosed with borderline personality disorder, PTSD and alcohol use disorder. On the same date, Dr. Jagan Chittiprolu diagnosed [Plaintiff] with major depressive disorder, anxiety disorder, and PTSD.
>
>In March of 2019, [Plaintiff] reported that she was still working 16 hours a week, and having anxiety symptoms, panic attacks and nightmare sometimes. She was diagnosed with major depressive disorder, anxiety disorder, and PTSD. Moreover, the record documents that on January 3, 2019, February 4, 2019 and March 8, 2019, [Plaintiff] attended counseling sessions with Zaara Khan, QMHS.
>
>On April 10, 2019, [Plaintiff] reported that her medications were helping; but she reported that she was getting more anxious and having dreams; generally, the record documents a normal Mental Status Exam, except her mood was noted as anxious and depressed. She was diagnosed with major depressive disorder, anxiety disorder and post-traumatic stress disorder.

(R. at 235-36 (internal citations omitted).)

## IV.  ADMINISTRATIVE DECISION

On June 13, 2019, the ALJ issued her decision. (R. at 225-246.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2022. (R. at 230.) At step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantially gainful activity since July 5, 2016, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, major depressive disorder, anxiety disorder, bipolar disorder, and post-traumatic stress disorder. (*Id.*) She further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 231.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

4

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should avoid ladders, ropes and scaffolds; she could frequently crawl; she is limited to performing simple routine tasks with no strict production quotas; she is limited to occasional interaction with coworkers and supervisors; she should avoid interactions with the public; and she would perform best in a position with few detailed instructions, where there are no more than occasional changes and decision making and where any changes are well explained, so as to provide for low stress work.

(R. at 232.) In reaching this determination, the ALJ assigned little weight to the opinion of Zaara Khan, QMHS, as Ms. Khan is not an acceptable medical source under the Social Security Administration's evidentiary rules. (R. at 236-237.) The ALJ assigned partial weight to treating psychiatrist, Jagan Chittiprolu, M.D.'s opinion, "as said opinion is somewhat consistent with the evidence of record; however, the record received at the hearing level does not support the severity of symptomology opined, as the record documents that [Plaintiff's] medications have been effective in reducing her levels of anxiety and depression." (R. at 237.) As to the opinions from the state agency psychologists, Aracelis Rivera, Psy.D. and Kristen Haskins, Psy.D., the ALJ assigned "great weight to the consultants' opinions, as said opinions are consistent with the evidence of record, supported by the consultants' knowledge of SSA's rules and regulations regard disability determinations, and consistent with the concentration and persistence, adaption and social interaction limitations found within the RFC stated above and phrased in vocationally relevant terms." (R. at 238.)

Relying on the VE's testimony, the ALJ found that Plaintiff is capable of performing her past relevant work as a warehouse worker as well as a significant number of jobs that exist in the national economy such as a laundry sorter, router, or a merchandise marker. (R. at 238-40.) She therefore concluded that Plaintiff has not been disabled under the Social Security Act since July 5, 2016. (R. at 240.)

5

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth two assignments of error: that the ALJ failed to properly account for the opinions of the State agency psychologists, Aracelis Rivera, Psy.D. and Kristen Haskins, Psy.D., despite finding that their opinions were entitled to "great weight"; and that the ALJ failed to provide the requisite "good reasons" for according less than controlling weight to Dr. Chittiprolu's treating source opinions. (ECF No. 17 at PAGEID ## 1235-1242.) First, Plaintiff argues that despite the State agency psychologists' opinion that Plaintiff required "a separate work area in a non-public setting," the ALJ improperly only limited Plaintiff to "avoid[ing] interactions with the public," without limiting Plaintiff to having a separate work area. (*Id.* at PAGEID ## 1235-1238.) Plaintiff contends such error was not harmless, as the VE explained that Plaintiff's "need for isolation, based on her experience, was work preclusive," so the ALJ should have included this limitation and found Plaintiff to be disabled. (*Id.*) Second, Plaintiff argues that the ALJ's reasoning for only affording Plaintiff's treating physician Dr. Chittiprolu's opinion "partial weight" was "entire[ly] . . . based upon the ALJ claiming that [Plaintiff's] medications improved her condition," without any explanation or support in the record. (*Id.* at PAGEID ## 1239-1242.)

In response, the Commissioner argues that the ALJ appropriately accounted for the State agency psychologists' proposed limitations "by restricting Plaintiff's contact with the public, to avoid all interaction, and then limited her to occasional interaction with coworkers and supervisors." (ECF No. 20 at PAGEID ## 1251-1253.) To that end, the Commissioner maintains that the ALJ's RFC is supported by substantial evidence, and is consistent with the State agency psychologists' opinion, as they "expressly allowed for occasional contact with others as part of Plaintiff's work abilities." (*Id.*) As to Dr. Chittiprolu's opinion, the

7

Commissioner argues that "the ALJ's decision in support of [the] mental RFC finding contains a record by record analysis of Plaintiff's mental health evidence, pointing not just to Plaintiff's statements that she was improving with medication, but also her mental status examinations, work activity, and lack of inpatient mental health treatment." (*Id.* at PAGEID ## 1253-1257.) The Commissioner insists the ALJ's decision is thus supported by substantial evidence, and argues in the alternative that "[e]ven if the ALJ's articulation . . . was strictly speaking deficient, the ALJ's error would be harmless since the rest of [her] decision makes up for the deficiency of [her] specific explanation." (*Id.*)

In her Reply brief, Plaintiff reaffirms her initial arguments and responds that "the Commissioner's argument in support of the ALJ's decision amounts to no more than blatant cherry-picking of the record and post hoc rationalizations." (ECF No. 21 at PAGEID # 1265.) The matter is thus ripe for judicial review. The Court will address Plaintiff's arguments separately.

**A.      The ALJ Properly Accounted for the State Agency Psychologists' Opinions.**

As a preliminary matter, the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); *see also* SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). Like other medical source opinions, the ALJ must consider State agency medical opinions. *See* 20 C.F.R. § 416.913a(b)(1)

("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996) (administrative law judges are required to consider state agency medical "findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and Appeals Council are not bound by findings made by State agency . . . but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (State-agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act"; thus, in some cases, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating or examining source.") (first alteration in original) (internal quotation marks omitted); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). To be clear, however, "[t]here is no regulatory

9

requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017).

Here, Plaintiff argues that "a closer comparison of [the State agency psychologists'] opinions with the ALJ's [RFC] will reveal a glaring inconsistency that could alter the entire outcome of the case at hand." (ECF No. 17 at PAGEID # 1235.) Specifically, Plaintiff highlights that the State agency psychologists both opined that Plaintiff "requires a separate work area in a non-public setting," in contrast to the ALJ's RFC which only stated (in relevant part) that Plaintiff "should avoid interactions with the public." (*Id.* at PAGEID # 1236.) In Plaintiff's eye, the State agency psychologists' opinions contained two limitations – first, that Plaintiff needed a separate work area, and second, that Plaintiff needed to be involved in a non-public setting – but the ALJ only incorporated one limitation in the RFC, despite affording "great weight" to the State agency psychologists' opinions. (*Id.* at PAGEID # 1237 ("The ALJ's [RFC] only accounts for the latter half of their opinion.").) Plaintiff argues that this error is not harmless, because the VE testified that a separate work area equated to isolation, which is "not the same as precluding interaction with the general public." (*Id.*)

In response, the Commissioner rejects Plaintiff's reading of the State agency psychologists' opinions and stresses that their opinions should be read in their entirety. (ECF No. 20 at PAGEID ## 1251-1253.) Specifically, the Commissioner points to the fact that the State agency psychologists opined that Plaintiff "requires a separate work area in a non-public setting ***with occasional routine contacts with others***," a limitation the ALJ incorporated into the

10

RFC. (*Id.* at PAGEID # 1252 (emphasis added).) The Commissioner argues that the ALJ "accounted for [the State agency psychologists'] concern by restricting Plaintiff's contact with the public, to avoid all interaction, and then limited her to occasional interaction with coworkers and supervisors." (*Id.*) To that end, the Commissioner also rejects Plaintiff's suggestion that a "separate work area" is equal to isolation, meaning "isolated from others, not just the public," arguing that the State agency psychologists themselves "expressly allowed for occasional contact with others as part of Plaintiff's work abilities." (*Id.* at PAGEID # 1253.) The Commissioner also argues that this RFC was supported by substantial evidence, as "[t]he record demonstrates that Plaintiff could handle this level of social interaction given that she lives with seven others, babysits her other grandchildren, displayed cooperative or normal behavior on examination, and worked part-time at various public-facing jobs, including at a gas station and at a restaurant." (*Id.* at PAGEID # 1252.)

In Reply, Plaintiff argues that "[r]estricting [Plaintiff's] interaction with other individuals is not the same as providing her with her own, separate workspace," and maintains that the ALJ failed to adequately explain why she did not incorporate both parts of the State agency psychologists' opinions into the RFC. (ECF No. 21 at PAGEID ## 1260-1262.) Plaintiff also takes issue with the record evidence cited by Plaintiff, characterizing them as *post hoc* rationalizations that were not made by the ALJ. (*Id.* at PAGEID # 1261.)

The Undersigned does not find Plaintiff's argument to be well taken and disagrees that the ALJ's RFC is inconsistent with the State agency psychologists' opinions or that it is not supported by substantial evidence. Specifically, the Undersigned finds that the ALJ properly considered and incorporated the State agency psychologists' opinions by limiting Plaintiff to "occasional interaction with coworkers and supervisors" and finding that "she should avoid

11

interactions with the public." The former limitation expressly parrots the State agency psychologists' opinions, and the latter limitation properly incorporates the State agency psychologists' opinions that Plaintiff "requires a separate work area in a non-public setting." (*See* R. at 346, 364.) Notably, the ALJ was under no obligation to adopt the opinions verbatim. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.").

To that end, the Undersigned also disagrees with Plaintiff's suggestion that "a separate work area" requires complete isolation, not just separation from the public. (*See* ECF No. 17 at PAGEID # 1237 ("[T]hey were opining that [Plaintiff] needed a separate work area, *i.e.* . . . [a] work area where she could be isolated from others, not just the public.").) As the Commissioner correctly observes, this is ***not*** what the State agency psychologists opined, as they expressly allowed for occasional contact with others. (*See* R. at 346, 364.) Thus it is Plaintiff's argument, not the ALJ's RFC, that is inconsistent with the State agency psychologists' opinions.

Finally, the Undersigned agrees with the Commissioner that the ALJ's RFC is properly supported by substantial evidence, as the record demonstrates that Plaintiff can handle the level of social interaction in the ALJ's RFC. (ECF No. 20 at PAGEID # 1252.) Contrary to Plaintiff's suggestion, the ALJ expressly found that the State agency psychologists' opinions were "consistent with the evidence of record," and the ALJ extensively discussed Plaintiff's ability to interact socially throughout her decision, with citations throughout to substantial evidence in the record. (*See* R. at 232 ("The record documents that [Plaintiff] lives with her daughter, her son-in-law, and a total of five children"), 234 ("[Plaintiff's] behavior, mood and affect were noted as

normal"), 235 ("Upon evaluation, [Plaintiff's] mood was noted as depressed, her thought process was noted as being logical, her behavior was noted as cooperative, as her affect was assessed as full"), 235-236 ("[O]n April 11, 2018 . . . [Plaintiff] reported that she was working at a Sunoco gas station").) Thus, while Plaintiff is correct that the Commissioner cites additional record evidence in the subject briefing, Plaintiff is incorrect to suggest that the ALJ's decision was not supported by substantial evidence, or that the ALJ failed to adequately explain her decision. Accordingly, Plaintiff's first assignment of error is not well taken.

**B.     The ALJ Provided "Good Reasons" for Affording Dr. Chittiprolu's Opinion "Partial Weight."**

Separately, under the applicable regulations the ALJ generally gives deference to the opinions of a treating source, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 408.[2] If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). If the ALJ does not afford controlling weight to a treating physician's opinion, then the ALJ must meet certain procedural

---

[2] "Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *5 n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)). Plaintiff's claim was filed before March 27, 2017, before the new regulations took effect.

requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical

14

opinion evidence within the written decision). Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. *Id.*; *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, after reviewing Dr. Chittiprolu's records, Plaintiff's treating physician, the ALJ found that Dr. Chittiprolu's opinion deserved only "partial weight" for the following reasons:

> Next, the undersigned considered the opinion of Dr. Jagan Chittiprolu, [Plaintiff's] treating psychiatrist, who prepared a Medical Opinion regarding Ability to do Work-related Activities (Mental), dated May 7, 2019. Dr. Chittiprolu opined that [Plaintiff] is seriously limited in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances, work in coordination with and proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in a routine work setting, deal with normal work stress, understand and remember detailed instructions, carry out detailed instructions, deal with stress of semi-skilled and skilled work, interact appropriately with the general public, and to travel to unfamiliar places. **Accordingly, the undersigned assigns partial weight to Dr. Chittiprolu's opinion, as said opinion is somewhat consistent with the evidence of record; however, the record received at the hearing level does not support the severity of symptomology opined, as the record documents that [Plaintiff's] medications have been effective in reducing her levels of anxiety and depression.**

(R. at 237 (emphasis added; internal citations omitted).) Plaintiff argues that the ALJ's "brief and conclusory evaluation" of Dr. Chittiprolu's opinion "did not include the necessary good reasons supported by substantial evidence explaining why less than controlling weight [was] being accorded to his opinions." (ECF No. 17 at PAGEID # 1239.) The Undersigned disagrees. As the ALJ noted throughout her decision, Plaintiff consistently reported that medications were effective in reducing her levels of anxiety and depression:

15

- **R. at 235:** "[O]n January 11, 2018, the record documents that [Plaintiff] reported that she felt better, but she was still depressed and very anxious; she indicated that her medications were working and denied experiencing any side effects" (citing R. at 1082);

- **R. at 235:** "On March 5, 2018, [Plaintiff] reported that her depression was getting better, voices and single word voices were better, she was less irritable, her mood and anxiety we[r]e improving, and her appetite and sleep were noted to be improved with the use of prescribed medications" (citing R. at 1084);

- **R. at 236:** "In September of 2018, [Plaintiff] reported that she was taking her medications and that her depression was better, as they were helping with symptoms" (citing R. at 1098);

- **R. at 236:** "On February 4, 2019, an Adult Diagnostic Assessment update indicated that [Plaintiff's] medications were helping" (citing R. at 1103); and

- **R. at 236:** "On April 10, 2019, [Plaintiff] reported that her medications were helping" (citing R. at 1162).[3]

For this reason, Plaintiff is mistaken to suggest that "[t]he ALJ merely concluded that [Plaintiff's] mental health condition improved because she was on medication" or that "[t]he ALJ did not even really identify any specific evidence contradicting Dr. Chittiprolu's opinions." (ECF No. 17 at PAGEID # 1241.) To the contrary, the ALJ appropriately evaluated Dr. Chittiprolu's opinion and she provided good reasons for assigning "partial weight" to that opinion. Further, the ALJ clearly supported her decision by citing substantial evidence throughout the record which showed that Plaintiff's medications had been effective in reducing her levels of anxiety and depression. (R. at 237.) Accordingly, Plaintiff's second assignment of error is not well taken.

---

[3] Additionally, as suggested by the ALJ in her decision, Plaintiff testified during her administrative hearing on May 15, 2019 (after Dr. Chittiprolu provided his opinion on May 7, 2019) that the medication helped with her anxiety. (R. at 264.)

## VII. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  October 13, 2021                    /s/ *Elizabeth A. Preston Deavers*
                                                                                  **ELIZABETH A. PRESTON DEAVERS**
                                                                                  **UNITED STATES MAGISTRATE JUDGE**